Good morning. May it please the Court, my name is Stuart Weltman. At counsel table with me is Elaine Ryan and Patty Syverson. Your Honors, there are really only two rulings that are germane to this appeal. And if I have time at the end, I will address why much of what defendant raises in the appellee's brief is really not germane to the appeal. The first of the two rulings that are germane are the ruling that the plaintiff's UCL and CLRA claims were preempted because, one, not all. One of the reasons he believed that defendant's product would help maintain a healthy heart was that it might help prevent cardiovascular disease. The second ruling is... Not any particular cardiovascular disease, but overall functioning of a healthy heart. Your Honor, the questioning, if you've looked at the deposition questioning, he was asked, you know, what does he believe, how does the product work, and he said, well, it helps maintain my healthy heart, or helps maintain my heart health. Eventually, counsel said, well, does that mean that it may prevent cardiovascular disease or heart disease, and he said, I guess, yeah, sure. Okay, so on the basis of that answer, his claim was then preempted according to the District Court. And then because he and other class members might subjectively interpret the label claim to include helping prevent heart disease, that there were class members who might also have this subjective interpretation, and therefore everything on the class side fell down, too. So really, when it comes down to it, there's really one critical ruling that has to be addressed here, and that's whether or not the District Court was correct in finding Plaintiff's claim preempted because during his deposition, he said one of the things he thought how the product worked was that it prevented heart disease. Are you arguing that the District Court could not consider the deposition's answers as part of its preemption analysis? Yes. The reason why, it's really fairly quite straightforward. The elements of a consumer fraud claim under both the CLRA and the UCL are, did a plaintiff rely on the labeling claim that's alleged to be false, and did the plaintiff purchase the product for a price higher than he or she would have if he or she had known the truth? Once those two elements are established, there are no other elements to a consumer fraud claim. So when the court considered his testimony about how he thought the product worked, no matter what he thought, that's irrelevant. And it's pretty clear under the law because we cited the court, the Hinojos case, and I just want to quote it because it really puts to end the entire inquiry. I think the respondents, the formal, I thought in their brief cited to a couple of cases, I think they're ERISA cases where the District Court did take into consideration whether or not the testimony should be informative of whether or not ERISA preempts the regular claims they would have been making otherwise in their employment cases. And so I just wanted to see what your response is to that and is that applicable here? Or are these consumer cases distinguishable? I think they are. I mean, ERISA, I don't lay claim to understand ERISA, and there are multiple layers of ERISA claims that I don't have any understanding. I do know about what consumer fraud requirements are, and they're simple. And my answer to your honor is I don't think ERISA has anything to do here and those cases don't have anything to do here. And if I could very quickly read a quote from this court in 2013 in the Hinojos case that establishes the fact. And let's understand something. We have to put this in context. The District Court made express findings that the plaintiff had relied on the labeling claim and that he had paid more than he would have if the truth was known. The court said he was a victim of consumer fraud. He just found that fraud was preempted because he said something about how he thought the product worked. If the plaintiff claimed that he was misled by what is called a disease claim as opposed to a structure function claim, and the complaint states a structure function claim, how is the plaintiff an adequate representative of the other class? Because your honor, I don't think he necessarily said that he was suing the defendant for a false disease claim. That's what the District Court found, right? Yeah, but that's what the District Court found. Did he make an error based on fact or did he make an error based on law? Because our scope of review is different as to one or the other. Yeah. Which one is it? Error is a matter of law. He testified to that. He also testified to other reasons why he bought the product. Did the judge testify? No, you're talking about Braddock. The court made an error of law. What was the error of law precisely stated, if you could? Okay. The error of law precisely stated was that the court considered facts other than the fact that the plaintiff relied on the label and that he paid more for the product than he otherwise would have paid if he had known the truth. That's the law. So the court accurately interpreted the answers to interrogatories and the depositions and found that Mr. Braddock was making a disease claim rather than a structure function claim? The court was wrong? Yes, the court was wrong. And he was wrong because he shouldn't have considered the deposition and interrogatories? That's an error of law? The error of law is considering facts that are irrelevant to establishing a consumer product. Why are they irrelevant? Well, if I could. He would not be a representative of the class that he is representing in his complaint if the district court were right that this was a structure function claim in the complaint and Mr. Braddock is calling it a disease claim. Well, but he is not calling it a disease claim. That's an issue of fact, isn't it? No. Because you take a look at the testimony of Mr. Braddock and the court says, this I interpret to be a disease claim. Now, is that wrong? Yes. Why is it wrong? If I could please quote from Hinojo's case for one second so I could establish why. How about quoting from the testimony and the judge's ruling and telling me what was wrong because the Hinojo case is not this case. Okay. Your Honor, again, I can only state what the law is, and the law is that once a plaintiff, and this is the Hinojo's case, I won't quote it. Once a plaintiff testifies that he or she has relied on the statement and has purchased the product at a price higher than he otherwise or she otherwise would if the truth was known, the inquiry ends. So if I could submit to you, Your Honor, what if at the deposition counsel had asked plaintiff, how does the product work? And he said, I don't know. Would he have then not had a claim because he didn't testify about what he thought, how the product worked? The point is how a plaintiff or a consumer thinks the product might work or not might work is irrelevant. The issue, only issue in a consumer fraud case are the two things. Did the plaintiff or the consumer see the light? I'm trying. Go on to the portion of your argument. I'm sorry, Your Honor. I really do want to answer your question, but I don't understand how I'm not answering it. Let me ask a question if I can, please. How does California's reasonable consumer standard for evaluating CLR and I guess UCL claims fit into the analysis, if at all? Like a glove because, quite frankly, the only issue with respect to whether or not there is reliance under the CLRA or materiality under the UCL is whether a reasonable consumer, an objective consumer, not a subjective consumer, a reasonable consumer would deem the statement material in purchasing that product. And the plaintiff deemed that material was the only reason he bought the product. Whether he thought he was correct about how it worked or not is irrelevant once he relied on the labeling statement and bought a product that was tainted with consumer fraud. If the rule is that the courts must consider what a plaintiff or a class member might believe as to how the product worked, then no class gets certified because believe you me, in every purchase transaction, whether it's this dietary supplement or a hair product or whatever it is, they may have completely, widely varying views about how they think the product might work, but that's not the issue under the law, under Kwikset, under Hinojos, under Middleman, under virtually every decision of this court. The inquiry is a two-step inquiry. Did the plaintiff purchase the product? Did they rely on the labeling claim? And did they pay more than they otherwise would? And I really would love to answer your question, Your Honor, because I really hate when a judge says that I didn't answer it. You didn't. Don't worry about it. Okay. Well, okay. Well, so... So what about the district court's analysis of the ascertainability, commonality of the class? Well, again... Does that all rise and fall based on the... Exactly. I mean, the class certification really, and mind you, one other point that has to be made is that the court lumped the UCL and CLRA claims together as if the class determination under both were the same, and they're not. The CLRA claim requires an element of proof of class-wide reliance. So if, arguably, considering what each class member's subjective belief about how the product worked is germane, that might enter into play in a CLRA class. But a UCL class requires no proof of class-wide reliance. The only elements to a class under the UCL are did the plaintiff rely on the product, label claims, did the plaintiff pay for it, and did he or she pay more than he or she would otherwise have paid if the truths were known. And so... Regardless whether the plaintiff's claim is representative of the class claim? In the UCL, under the law, the class determination is did the plaintiff meet his or her reliance requirements, and then is the representation material to the reasonable consumer? That's it. Regardless whether his claim is similar to that of the class? Well, Your Honor, claims don't have... Even if you believe that his statement about... It doesn't matter as long as he bought it and read the label. Yes, because he's representative. So you're saying there's no issue of regarded as, whatever he regarded that label as, doesn't matter for preemption purposes or standing or anything else, just so he bought it. You could never have a preemption issue under the California laws. Is that what you're saying? I'm sorry. You could have preemption issues, but not based... Under your argument, how could you ever have a preemption issue? Because if the plaintiff's proofs were that this were a false disease claim, which they weren't, which the defendant argues in their appellate brief, and I've only got a minute and 30 left, and I'd like to save some for rebuttal, Your Honor, but if you want me to answer the question, if the claim is proven false, and we submit to you that our expert has submitted that because he stated that vitamin E supplements in these doses do not provide any heart health benefits. So that means structured function heart health benefits. That means disease heart health benefits. His opinion, which is still in the record, there's no doubt in our motion,  So the plaintiff here, if you believe his testimony about subsequent, about how the product work is germane, he's also testified that he relied on other things that are not preempted. So cut out that testimony if you want to. The fact is that he's testified and testified to the elements of the claim. I've only got 40 seconds, so I might as well use it up and not do rebuttal. So the fact is that that is really the only issue here, and it's the law. It's been the law for 15, 20 years in this circuit, and what this does is open up a can of worms that doesn't only, not only apply to consumer fraud cases, but how about a securities fraud case where if you buy a stock in the publicly traded exchange and it's tainted with fraud, your reliance is presumed. Well, what if the plaintiff testifies about what they thought the fraud was and it's not consistent with what the fraud was? Well, that testimony is irrelevant, Your Honor. My time is up. If there are any other further questions, I will sit down. Thank you. Good morning, Your Honors. Rene Tetreault for Pharmavide. Braddock is the fifth plaintiff that these same lawyers have put forward in their repeated efforts to state a claim and come up with a class on vitamin E against Pharmavide. Now, theoretically, we can keep coming back here on new plaintiffs, but the reality is that the plaintiffs that we've seen so far show to a fair of the well why Braddock cannot certify a manageable class in this case. Now, long before I knew who this panel was, I had intended to open my remarks by quoting from Judge Bea's concurring decision in the Baker v. Microsoft case because I thought those words so perfectly described this fifth bite at the apple that Braddock wants to take. And I'm just going to quote a short passage from that because I think it describes this. Plaintiffs' counsel need not present meritorious claims to achieve victory. They need obtain only a favorable class certification ruling. In light of the minimal cost of filing a class complaint, an obvious strategy suggests itself. Keep filing the class action complaint with different named plaintiffs until some judge somewhere grants the motion to certify. And Judge Bea concludes in words that describe where we are. Then plaintiffs will have a certified class they can use to extract an interorum settlement. If interorum settlements are bad, duplicative lawsuits employed to extract such a settlement are worse. Well, why not excise out what the question was? I think there was one, maybe two questions on heart disease that was elicited. And it looks like that was the looking at the deposition testimony, it looks like that's trying to elicit from this individual that it was heart disease, wasn't it? It was heart disease. He kept saying maintaining heart. And then I think there's two statements where he says, okay, heart disease. Why can't we or the district court excise that out and say, okay, heart disease is preempted, but you can go forward on the structure function? It seemed like it was undisputed going into the proceeding that it was structure function. It is undisputed that it's a structure function statement. But his interpretation, and I will address the importance of his interpretation, his interpretation was uniquely as disease. He put that in his interrogatory responses. He gave multiple deposition statements to that effect. So it was a uniquely disease interpretation. Multiple? I counted two. Do you have more than two? Pardon me? I counted two. Well, we cite the ones in the brief, but also in his interrogatory responses, which is cited in the brief as well. I'm reading from one page. It says, what exactly do you think that the nature-made vitamin E was going to do for you? I thought it was going to help maintain my healthy heart at the time. And what does that mean? A layman's term, I would say free of heart disease. So it's going to prevent heart disease for you? Objection. I don't know if I had heart disease. I never have been diagnosed with heart disease, so I don't know how to really answer that. So I guess I'm just trying to figure out that's how we're going to determine whether class actions go forward? Your Honor, you're going to determine that because he put it in his interrogatory responses that he said, this is my interpretation. And his interpretation is a very important interpretation. Take this as an example. If he had said, you know, yeah, that is a structure function claim, but I read that as meaning that vitamin E would prevent pancreatic cancer. We would not be having this discussion today because we would know that he is not an adequate class representative. He couldn't represent the class. And here what he is saying is really the same thing with a very minor tweak. Instead of pancreatic cancer, he's just saying heart disease, and he put it in his interrogatory responses. Mr. Tatro, isn't one way to express the hope that vitamin E provides a healthy heart to express it in that term? That is, it prevents disease? Your Honor. How does that convert it from a structure function claim into a disease claim? The judge, the district court judge addressed that very question, and he said that prevents and keeps free are really the same thing. And so even though he's trying to couch it, he is really just relabeling a structure function claim as a disease claim and saying that he can go forward. I flipped that around. He's relabeling a disease claim as structure function and saying he can go forward with it. But he is really making a claim that it's preventing heart disease. Don't you find that the response of the plaintiff in his interrogatories and in his deposition are at least ambiguous as to whether he's making a structure function claim or a disease claim? Your Honor, I guess I would say I don't find his deposition ambiguous, and his interrogatory response says very clearly, which meant to him keeping his heart free from heart disease. So I don't think that's ambiguous. Is that a sine qua non of a healthy heart? Maintaining a healthy heart. Your Honor, that is what we discussed. He's not making a claim that he thinks that the pill, that vitamin E will prevent a specific heart problem like you just said a moment ago, pancreatic cancer. He's not saying it prevents atrial fibrillation. It prevents arterial blockage. He's saying it prevents disease as a way of keeping my heart healthy. It prevents heart disease, and it's just, as I was saying, if he had just take out cancer or take out the word pancreatic in the example I used, if he had said I believe this prevents cancer, again, we wouldn't be having this discussion. And that's really what he's doing. Instead of cancer, he's saying heart disease. How does the California's Reasonable Consumer, I'm going to ask you the same question that I asked your colleague across the aisle here, how does California's Reasonable Consumer Standard for evaluating, you know, CLRA and UCL claims fit into this analysis? I think it fits in this way. Regardless of whether there is a reasonable consumer interpretation, and I have a long discussion that I would like to include on the issue of reliance, because I think that the reliance issue has gotten very confused here. But the fact that there is a reasonable consumer who may look at this in a certain way does not give an absent class member the right to recover on a preempted claim. Even if the California legislature or a ballot measure even had said, absent class members can recover on a preempted claim regardless of whether they relied or not, the supremacy clause would stop that. And that's what's really going on here. And if you look at the cases that the plaintiff discusses, Tobacco II, the 2009 Tobacco II decision. I'm looking at Tate, Central District of California decision versus, it's a district court decision, but there's a couple of them out there that says the subjective test, the reasonable consumer test, renders claims under the UCL, FAL, and CLRA ideal for class certification because they will not require the court to investigate class members' individual interaction with the product. And you can see that there's a couple other district courts who are ruling that way, and I know that's not precedent for us, but I'm trying to figure out why that's not a reasonable way to approach this. And the reason is because that is true, possibly, if you don't have a preempted claim by the absent class members. If you look at Tobacco II, which is a case that Braddock relies on heavily, the 2009 decision had no preemption in it, and the 2007 Tobacco II decision by the California Supreme Court, which is very important because that framed what was there in 2009, that discusses at length preemption, and it throws out the class allegations on a preempted claim, so that when you get to 2009, and when these statements, such as are in the Tate case, come to light then and come to the fore, and like in the Stearns case from the Ninth Circuit, there is no preemption at work in the absent class members' claims, and that's the difference. We're not saying that the absent class members' reliance has to be proved in order to have a UCL claim. That's not what we're saying, and that's not what the cases would say. We're not trying to argue that. That's true under the CLRA. But it seems like under your approach, and I think kind of what the district court did here, and I'm trying to figure out here exactly what the district court said, but it seems like the court here, the district court below, sort of presupposed or assumed the court would have to ascertain each individual interpretation of maintaining a healthy heart instead of looking how a reasonable consumer would interpret that statement. And I guess I want to know what the authority would be for that route that the district court went. The United States Supremacy Clause, which forbids somebody from prosecuting a preempted claim, and that's the absent class members. So they would have to ascertain everybody's individual reason. That seems like a unique approach. Well, Your Honor, I wasn't smart enough to write the United States Constitution that includes the Supremacy Clause, but the cases make it pretty clear that you can't recover on a preempted claim if you're trying to assert a state law claim. And the absent class members would be trying to recover on a preempted state law claim, and that's the problem. That's not what challenges. How do you determine that? So it looks like that's how the district court did it. Are you saying that's how it's done in every case, that you have to anticipate or figure out what every individual and how they interpreted it to be able to figure out whether there's a class instead of looking at it from a reasonable standard? Your Honor, I believe that in the situation where you're going to be pushing money from one side of the table to the other on a claim that would be preempted if it was a claim of a certain nature, then yes. I believe the answer is you would have to find a way to manage the class so that you could ascertain that. And in the CLRA context, you would have to do that regardless. This is really the UCLA. And what if you have split motives? I mean split, I think that was the Inkle case that was cited. The Hinjos case, yes. And, Your Honor, we cited Romero v. Flowers, which was an all-natural UCL case in which the plaintiff's interpretation on a preemption issue was considered. In the Sandoval v. Farmer. No, I was thinking of Inkerwer and Soroski. Are you familiar with those cases? They were a subcouple, I think, ERISA or employment-type cases because you all had suggested that maybe we could apply what is happening in ERISA here. And even in those cases, it seemed like there were split motives or split reasons. Well, Your Honor, those two ERISA cases don't jump to mind. But the cases that I do recollect are the UCL cases where the court looked at the plaintiff's interpretation, the named plaintiff's interpretation in order to make a determination, including determinations on preemptions, and that would be. Mr. Tatro, can I interrupt you for just a second? Of course. Is it your claim here that a disease claim is preempted? A disease claim is preempted on a structure function claim in the sense that you cannot re- You're not answering my question. Okay. As I understand it, for a preemption to apply, there has to be a preapproval of the label by the FDA. Am I wrong? That's not quite right, Your Honor. For a preemption to apply, if you have a structure function claim, and you have a structure function claim here, as everybody agrees, then what the FDA says, you can proceed with that. And the FDA says any attempt to add to that a labeling requirement under a state law rubric is preempted, and that's express preemption, it's in the statute, and it's in the FDA regulations. So to re-characterize this structure function claim as a disease claim- I'm not following you. Okay. I'll slow down. My thought was that a label that deals with disease, this medicine prevents atrial fibrillation, that's a label, right? Okay. That has to be approved by the FDA for preemption to apply, right? In a different context than a disease claim, that might be true, but- But unless there's preapproval of the label for a disease claim, there can't be preemption, can there? Yes, there can, because we are preempting via the structure function route, not the disease claim route. So we've got a structure function claim which closely tracks, you know, it's basically the same thing as what the FDA has said, this is a proper structure function claim. And a claim has to be either a disease claim or a structure function claim, it can't be both. And if it is a structure function claim, which we've got, then we've got an express preemption provision that says you can't add to that a requirement that isn't under our FDA rubric. So what Braddock is trying to do, he's saying, okay, it's structure function, but I'm going to put on that the requirement that this be able to treat or prevent disease, in addition to dealing with the structure function, and that's the part that's preempted. Because he's turning it into a disease claim, he's trying to re-characterize a preempted claim on structure function as a disease claim, and then prove that it's false because it doesn't treat or cure disease. That's the problem.
judges: Bea, Murguia, Keeley